## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

ECHOSTAR SATELLITE LLC., et al.,

                Plaintiffs,

v.                                      CIVIL ACTION NO.  5:07-cv-00096

WILLIAM A. ROLLINS,

                Defendant.

### MEMORANDUM OPINION

Pending before the Court is Plaintiffs' Motion for Default Judgment [Docket 17] filed on July 30, 2007.[1]  For the reasons stated herein, the motion is **GRANTED**.

### *I.  BACKGROUND*

Plaintiffs filed the instant action on February 14, 2007, alleging that Defendant had illegally posted digital satellite encryption codes designed to assist in the piracy of Plaintiffs' DISH Network technology on various Internet web sites in violation of the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201-03, the Federal Communications Act of 1934, 47 U.S.C. § 605, and the Electronic Communications Privacy Act, 18 U.S.C. § 2511.  (Docket 1 ¶¶ 59, 80, 89, 96.)  Plaintiffs also alleged that Defendant violated the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), by misappropriating Plaintiffs' DISH Network logo.  (*Id.* ¶¶ 105, 108.)

---

[1]  Plaintiffs had previously filed a Motion to Extend the Deadline to file their motion for default judgment [Docket 16] on July 9, 2007.  For good cause shown, that motion is **GRANTED**.

Plaintiffs personally served process on Defendant at his home at 231 Johnny Hollow Road, Beckley, West Virginia, 25007, on February 20, 2007.  (Docket 5.)  Pursuant to Rule 12(a) of the Federal Rules of Civil Procedure, Defendant was given twenty days to file his answer.  On April 17, 2007, over one month past the time when Defendant's answer was due, Plaintiffs filed a Motion for Entry of Default [Docket 11], which the clerk entered on April 18, 2007 [Docket 12].  A copy of the clerk's entry of default was mailed to Defendant at the address listed above, however, the mail was returned as undeliverable [Docket 14].  Plaintiffs filed the instant motion on July 30, 2007, requesting statutory damages, attorney's fees, costs, punitive damages and various forms of equitable relief.  To date, Defendant has neither answered the complaint nor responded to Plaintiffs' motion for default judgment.

## II.  LEGAL STANDARD

Entry of a default judgment is governed by Rule 55 of the Federal Rules of Civil Procedure. Plaintiffs have obtained entry of default by the clerk pursuant to Rule 55(a), and now seek a default judgment by this Court pursuant to Rule 55(b)(2).  "Although the clear policy of the Rules is to encourage dispositions of claims on their merits, trial judges are vested with discretion, which must be liberally exercised, in entering such judgments and in providing relief therefrom." *United States v. Moradi*,  673 F.2d 725, 727 (4th Cir. 1982) (internal citations omitted).

If, after being properly served under Rule 4, a party "fails to plead or otherwise defend," that party is in default and the well-pleaded allegations in the complaint as to liability may be taken as true. *See* Fed. R. Civ. P. 55(a); Fed R. Civ. P. 8(d); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("the defendant, by his default, admits plaintiff's well-pleaded allegations of fact") (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.

2

1975) (citations omitted)).  However, "[a] judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment."  Fed. R. Civ. P. 54(c).

Plaintiffs seek the maximum damages allowable under the statutes.  When a party is in default, as is the case here, a district court has discretion to award damages greater than the minimum amount allowable by statute.  *See, e.g.*, *Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 63-64 (1st Cir. 2002); *see also Getaped.com, Inc. v. Cangemi*, 188 F. Supp. 2d 398, 400 (S.D.N.Y. 2001) (awarding damages in excess of the statutory minimum for copyright infringement of a website even though defendant was in default). The Court may conduct a hearing to determine the amount of damages pursuant to Rule 55(b)(2), however, it may award damages without a hearing where the amount claimed is "capable of mathematical calculation." *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).  Courts are afforded much discretion when determining the need for such a hearing. *Pope v. United States*, 323 U.S. 1, 12 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and give judgment accordingly.").

Plaintiffs also seek various forms of equitable relief.  At least one district court has required a plaintiff seeking an injunction on a motion for default judgment to show that "(1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction."  *Cablevision of S. Conn., Ltd. v. Smith*, 141 F. Supp. 2d 277, 287  (D. Conn. 2001) (citation omitted).  Plaintiffs' requests are generally authorized under the applicable statutory provisions.  The Court addresses each of these statutes separately.

A.    *Digital Millennium Copyright Act*

United States District Courts have jurisdiction to hear cases brought under the Digital Millennium Copyright Act . 17 U.S.C. § 1203(a).  In these cases, a court may

> grant temporary and permanent injunctions on such terms as it deems reasonable to prevent or restrain a violation, . . . order the impounding, on such terms as it deems reasonable, of any device or product that is in the custody or control of the alleged violator and that the court has reasonable cause to believe was involved in a violation[,] . . . and . . . as part of a final judgment or decree finding a violation, order the remedial modification or the destruction of any device or product involved in the violation that is in the custody or control of the violator or has been impounded under paragraph (2).

§ 1203(b).  Courts may also award either actual damages or statutory damages "for each violation of section 1201 in the sum of not less than $200 or more than $2,500 per act of circumvention, device, product, component, offer, or performance of service[.]" § 1203(c)(3).

B.    *Federal Communications Act of 1934*

The Federal Communications Act of 1934, 47 U.S.C. §§ 151-615, also gives United States District Courts jurisdiction over cases brought under it and provides for similar recoveries to those authorized under the Digital Millennium Copyright Act.   § 605(e)(3)(B)(iii).  One difference, however, is that it makes the award of costs and attorney's fees mandatory.  *Id.*  In addition to authorizing a court to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of [the Act,]" § 605(e)(3)(B)(i), the statute allows plaintiffs to elect to recover actual damages or statutory damages of "not less than $1,000 or more than $10,000" for each violation, and up to $100,000 if the violation was committed wilfully and for purposes of commercial advantage or economic gain.  § 605(e)(3)(C).

4

The Act further indicates that "for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000[.]" § 605(e)(3)(C)(i)(II). Paragraph (4) applies to any person who "manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services," § 605(e)(4). While some courts have not applied this provision to defendants who were end-users, *see, e.g.*, *DirecTV, Inc. v. Turner*, No. 03-2287-CM, 2006 WL 2522630 (D. Kan. July 13, 2006) (unpublished opinion), Defendant in this case distributed Plaintiffs' access codes to others via Internet web sites. Even if Defendant did not distribute codes via the Internet, the Fourth Circuit has held in an unpublished opinion that individual users are not necessarily exempt from the provisions of § 605(e)(4), rather, they may be held liable if a court finds that they "modified" or "assembled" devices within their own home. *DirecTV, Inc. v. Pernites*, 200 F. App'x 257, 2006 WL 2711978, *1 (4th Cir. Sept. 21, 2006). Thus, paragraph (4) of the statute is relevant here.

### C.    *Electronic Communications Privacy Act*

The Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-21, again authorizes courts to award equitable relief, actual or statutory damages, costs and attorney's fees. § 2520(b). It also provides for the award of punitive damages, where appropriate. *Id.* Statutory damages under this section may be calculated by "whichever is the greater of $100 a day for each day of violation or $10,000." § 2520(c)(2).

D.      *Lanham Act*

The Lanham Act, 15 U.S.C. §§ 1051-141n, entitles plaintiffs to both monetary and injunctive relief for trademark infringements. § 1114.  To qualify for monetary relief, plaintiffs must prove that the acts constituting infringement were "committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive."  *Id.*  Courts are also authorized to order the "seizure of goods and counterfeit marks involved in such violation and the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved in such violation." § 1116(d)(1)(A).

## III.  ANALYSIS

Plaintiffs seek the maximum statutory damages and punitive damages, together with reasonable attorney's fees and costs.  (Docket 17 ¶ 6.)  Plaintiffs also seek a permanent injunction against Defendant, (1) enjoining him and his agents from further violations of the statutes; (2) impounding all devices used in the instant violations; (3) ordering Defendant to post a notice on all web sites owned and operated by him that all devices provided by him have been recalled and should be sent to Plaintiffs or destroyed; (4) requiring Defendant to identify anyone working with him and enlist them in contacting persons who have received devices from Defendant to notify them that all such devices have been recalled and should be sent to Plaintiffs or destroyed; (5) directing Defendant to preserve all records related to any violation; (6) permitting Plaintiffs to inspect and copy Defendant's records at their discretion; and (7) requiring Defendant to file a compliance report with the Court within thirty (30) days of the entry of the injunction.  (*Cf. id.* ¶ 7.)

A.       *Statutory Damages*

Under the provisions of 17 U.S.C. § 1203(c) and 47 U.S.C. § 605(e)(3)(C)(I), Plaintiffs are permitted to elect whether to pursue actual or statutory damages.  Moreover, pursuant to 18 U.S.C. § 2520(c)(2), the Court may award either actual or statutory damages, whichever is greater.  In their brief, however, Plaintiffs request that the Court award them the maximum statutory damages. (Docket 17 ¶ 7.)

Plaintiffs are not entitled to recover damages for each violation under all three statutes.  In most jurisdictions, "it is well settled that where a defendant is found to have violated [multiple] statutes, the court should award damages pursuant to the mo[st] severe statutory damages provision[.]" *Cablevision of S. Conn., L.P. v. Smith*, 141 F. Supp. 2d 277, 286 (D. Conn. 2001) *(citing Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1007 (2d Cir. 1993)).  In the case at bar, each statutory scheme offers a different assessment of damages: § 1203 of the Digital Millennium Copyright Act authorizes damages of $250 to $2,500 per violation; § 605 of the Federal Communications Act authorizes damages of $1,000 to $10,000 per violation, or $10,000 to $100,000 per violation if the defendant violated § 605(e)(4); and § 2520 of the Electronic Communications Privacy Act mandates that a court imposing statutory damages award "$100 a day [per violation] for each day of violation or $10,000[,]" whichever is greater.

Based on Plaintiffs' request that statutory damages be awarded, the lack of evidence in the record regarding Plaintiffs' actual damages, and the severity of the damages provision in the statute, the Court finds that an award of statutory damages under 18 U.S.C. § 2520(c)(2)(B) is appropriate. The Fourth Circuit has found that courts have discretion in awarding damages under this section. *Nalley v. Nalley*, 53 F.3d 649, 651 (4th Cir. 1995).  In fact, this Court has previously declined to

7

award such damages where the defendant was an end-user and did not assist others in violating the statute. *See DirecTV, Inc. v. Borich*, No. 1:03-cv-2146, 2004 WL 2359414 (S.D. W. Va. Sep. 17, 2004) (Goodwin, C.J.).  In exercising this discretion, courts look to several factors:

> (1) whether the defendant profited by his violation; (2) whether there was any evidence that the defendant actually used his pirate access devices; (3) the extent of [the plaintiff's] financial harm; (4) the extent of the defendant's violation; (5) whether the defendant had a legitimate reason for his actions; (6) whether an award of damages would serve a legitimate purpose; and (7) whether the defendant was also subject to another judgment based on the same conduct.

*DirecTV, Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1132 (M.D. Ala. 2004) (citations omitted).

Upon consideration of these factors, the Court finds such an award to be appropriate under the circumstances of this case.  Defendant was not merely an end-user of the DISH Network technology; he actively participated in violating the statutes by knowingly posting encryption codes on the Internet.  Moreover, he knew or should have known that the web sites on which he posted the codes were used by other individuals who wished to circumvent Plaintiffs' encryption technology.  Thus, his conduct allowed countless others to violate these statutes, depriving Plaintiffs of potential revenue.  Although there is no evidence that Defendant profited from his actions or used the codes himself, he repeatedly violated the statute and has offered no legitimate explanation for his actions.  Moreover, there is no evidence that he is being punished in any other way.  Based on these findings, the Court is of the opinion that an award under § 2520 is appropriate.

Although the Court may assess damages of the greater of $100 a day or $10,000, Plaintiffs have presented no evidence regarding the number of days during which Defendant violated the statute.  Despite Defendant's failure to contest Plaintiffs' allegations, the Court must still determine

whether its award of damages is reasonable and just.  In making such a determination, this Court has previously been guided by five factors:

> (1) whether the defendant profited as a result of his violation; (2) whether the defendant assisted or induced others in violating the statute; (3) whether the defendant's violation was willful or flagrant; (4) whether the damage award will be sufficient to deter similar conduct; and (5) whether the damage award is comparable to awards in similar cases.

*Borich*, 2004 WL 2359414 at *5 (citing *Huynh*, 318 F. Supp. 2d at 1131).  Again, there is no evidence of Defendant's profiting from his violation, however, Plaintiffs have alleged that he willingly assisted and induced others to violate the statutes.  Although there is no way to determine what amount would serve as a sufficient deterrent, an award of $10,000 per violation would both satisfy the statutory mandate and be in conformity with cases involving similar conduct.  *See, e.g.*, *Smith*, 141 F. Supp. 2d at 287 (assessing $10,000 for each violation of 47 U.S.C. § 605(e), where the defendant distributed decoding devices to others).  Finally, because Defendant distributed encryption codes to others via the Internet, the enhanced penalties under 47 U.S.C. § 605(e)(4) apply, mandating damages of at least $10,000 per violation.  Based on the foregoing, the Court finds that an award to Plaintiffs of $10,000 is appropriate for each of Defendant's ten (10) violations of the above-referenced statutes for a total statutory damage award of $100,000.[2]

---

[2]  Plaintiffs are also entitled to damages under the Lanham Act, 15 U.S.C. § 1114, because Defendant's trademark infringement constitutes a separate cause of action.  However, Plaintiffs have requested no such relief in their complaint, and the Court has no authority to award relief not sought in the demand for judgment. Fed. R. Civ. P. 54(c).  Moreover, the Court is satisfied that the statutory damages award previously addressed is sufficient to deter similar conduct in the future.  Therefore, the Court declines to award Plaintiffs any damages under this provision.

B.    *Punitive Damages*

Plaintiffs also seek punitive damages, as authorized under the statute.  18 U.S.C. § 2520(b)(2) ("In an action under this section, appropriate relief includes . . . punitive damages in appropriate cases[.]").  It is well-settled that punitive damages "are aimed at deterrence and retribution."  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003).  Courts generally may award punitive damages under this provision "when the aggrieved party demonstrates that a 'wanton, reckless or malicious violation' of the Act has occurred."  *Smoot v. United Transp. Union*,  246 F.3d 633, 647 (6th Cir. 2001).  In the case at bar, Plaintiffs' limited evidence does not show that Defendant's conduct was willful, reckless, or malicious to such a degree as to warrant punitive damages.  Moreover, the statutory award and injunctive relief awarded by the Court is sufficient to deter similar conduct in the future.  Therefore, the Court finds that Plaintiffs are not entitled to punitive damages.

C.    *Attorneys' Fees and Costs*

Plaintiffs in their motion seek to recover reasonable attorneys' fees and costs, and have submitted the affidavits of Christine D. Willetts and Christopher J. Sears in support thereof.  This recovery is authorized by 47 U.S.C. § 605(e)(3)(B)(iii), which provides that the Court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to any aggrieved party." While the Court does not have discretion in awarding the fees, it does have discretion to determine whether the amount is reasonable.  When considering the reasonableness of such an award, the courts are to consider the following factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the

> attorney's expectations at the outset of the litigation; (7) the time
> limitations imposed by the client or circumstances; (8) the amount in
> controversy and the results obtained; (9) the experience, reputation
> and ability of the attorney; (10) the undesirability of the case within
> the legal community in which the suit arose; (11) the nature and
> length of the professional relationship between attorney and client;
> and (12) attorneys' fees awards in similar cases.

*Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) (citing *EEOC v. Serv. News Co.*, 898 F.2d 958, 965 (4th Cir.1990)).  Based on the Court's review of the affidavits submitted by Plaintiffs and the factors listed above which the Court has a basis to consider, the Court finds that these costs and fees are reasonable and will enter judgment against Defendant in the amount of $9,196.65, which may be supplemented upon motion by Plaintiffs for subsequent costs and fees.

> D.     *Injunctive Relief*

Finally, Plaintiffs seek several forms of injunctive relief.  For the Court to grant such relief, Plaintiffs must show that "(1) [they are] entitled to injunctive relief under the applicable statute and (2) [they] meet[] the prerequisites for the issuance of an injunction." *Cablevision*, 141 F. Supp. 2d at 287 (citation omitted).  By Defendant's default, Plaintiffs have shown that they are entitled to the applicable relief under the statute.  Thus, the Court turns to the standard for the issuance of an injunction.

The standard for a permanent injunction, such as the one sought by Plaintiffs, is similar to the standard for a preliminary injunction.  The sole difference is that "the plaintiff must establish success on the merits and that the focus on irreparable harm includes the question whether the plaintiff has an adequate remedy at law." *Nat'l City Bank v. Turnbaugh*, 367 F. Supp. 2d 805, 821

(D. Md. 2005) (citing *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987) (citations omitted)).[3]

A finding of default satisfies the requirement of success on the merits. *Loud Records, LLC v. Lambright*, No. 1:05-0171, 2006 U.S. Dist. LEXIS 38016, at *7 (S.D. W. Va. March 30, 2006) (Faber, J.) (citing *Artista Records, Inc. v. Beker Enters.*, 298 F. Supp. 2d 1310, 1314 (S.D. Fla. 2003)). The next step is to determine whether Plaintiffs have an adequate remedy at law. In a case brought under the Copyright Act, this Court held that harm caused by copyright infringement was irreparable because "plaintiffs' injury cannot be fully compensated or measured in money . . . [and] . . . absent an injunction, plaintiffs would remain vulnerable to future incursions by defendant as, by default, defendant has already admitted to willfully and repeatedly infringing on plaintiffs' copyrights." *Id.* That analysis applies here because Plaintiffs similarly would remain vulnerable to Defendant's future violations of the statute. Moreover, public policy weighs heavily in favor of an injunction, which facilitates the enforcement of statutes such as the Digital Millennium Copyright Act against defendants who have already been shown to have violated them. Based on this analysis, Plaintiffs are entitled to injunctive relief as set forth more fully below.

Plaintiffs seek their injunctive relief in seven parts, labeled A through G. The Court addresses these parts in turn.

---

[3] Before issuing a preliminary injunction, a court must consider "(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the request is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest." *Microstrategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (citing *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 195-97 (4th Cir. 1977)).

*(1)     Part A*

In Part A of Plaintiffs' request for injunctive relief, they essentially ask the Court to enjoin Defendant from further violating 17 U.S.C. § 1201 and 47 U.S.C. § 605.  Such a request is common in actions brought under the Digital Millennium Copyright Act, and courts have readily granted such relief.  *See, e.g.*, *DirecTV, Inc. v. Price*, 403 F. Supp. 2d 537, 534 (M.D. La. 2005); *cf. Borich*, 2004 WL 2359414 at *6.  The Court finds that this relief is reasonable to prevent further violations of the statutes because it will allow Plaintiffs to enforce the injunction without having to file another lawsuit.  Therefore, in accordance with the Judgment Order entered contemporaneously with this Memorandum Opinion, Defendant is enjoined from further violating 17 U.S.C. § 1201 and 47 U.S.C. § 605.

*(2)     Part B*

Plaintiffs next seek an Order impounding all devices in Defendant's custody or control that the Court has reasonable cause to believe were involved in a violation of the above-referenced sections.  This relief is expressly authorized by statute.  17 U.S.C. § 1203(2).  Therefore, as will be fully set forth in the Court's Judgment Order filed contemporaneously with this Memorandum Opinion, the Court grants Plaintiffs' request that such devices be impounded.

*(3)     Part C*

Plaintiffs also request that the Court order Defendant to post a notice on all web sites owned or operated by him.  Plaintiffs have neither alleged nor proven that Defendant owns or operates any web sites on which such notices may be posted.[4]  Rather, Plaintiffs offer evidence only that

---

[4]  The Court "cannot issue any injunction that is broader than the allegations in the complaint." *Loud Records*, 2006 U.S. Dist. LEXIS 38016, at *9 n.1 (citing *Cromer v. Kraft Foods N. Am., Inc.*, (continued...)

Defendant posted access codes on web sites owned and operated by third parties.  Therefore, Plaintiffs' request for this relief will be denied.

> (4)     Part D

Plaintiffs next request that the Court order Defendant to identify all persons working in concert with him and use any information in their possession to contact others who have obtained information or devices from Defendant in violation of the statutes.  Such information would likely have been available to Plaintiffs during discovery had Defendant not defaulted.  Moreover, the Court finds that this type of information would be useful to prevent and deter further violations of the statute as it would lead Plaintiffs to other persons who are attempting to circumvent their encryption technology.

This type of relief is not entirely novel and has been granted routinely at the pre-trial stage. *See, e.g.*, *Time Warner Cable of New York City v. M.D. Elecs., Inc.*, 101 F.3d 278, 281 (2d Cir. 1996) (finding discovery order requiring defendants to turn over names and addresses of customers who purchased pirate decoders to be "a reasonable request"); *MediaOne of Del., Inc. v. E & A Beepers and Cellulars*, 43 F. Supp. 2d 1348, 1356 (S.D. Fla. 1998) (issuing preliminary injunction ordering defendants to turn over names and addresses of customers who purchased unauthorized cable decoding equipment).  While the instant case is not at the pre-trial stage, the Court finds that such information is nevertheless relevant and it is within the Court's discretion to issue such relief. Based on the foregoing, the Court orders Defendant to provide such information to Plaintiffs as described in the Court's Judgment Order.

---

[4](...continued)
390 F.3d 812, 817 (4th Cir. 2004).

14

(5)    *Part E*

Part E of Plaintiffs' motion asks the Court to order Defendant to preserve and maintain all records related to his violations.  Although default has already been entered by the clerk and there is no need to preserve evidence for a possible trial,[5] the Court finds such a request to be reasonable to prevent further violations of the statute.  Such information may become relevant should this Court's judgment be appealed, or may be valuable to future plaintiffs who may have been injured by Defendant's conduct, or helpful to Plaintiffs here in an effort to develop their technology in such a way as to prevent and deter future violations of the statute.  Thus, Plaintiffs' request as to this form of relief will be granted.

(6)    *Part F*

Part E is also necessary to effectuate Part F, which seeks an Order permitting Plaintiffs, by counsel, to inspect and copy Defendant's computer files which are used for the purpose of circumventing access technology.  While Plaintiffs' request is tailored broadly, the Court is of the mind that the purpose of the request, which is to gain information regarding the manner by which access technology is circumvented, is reasonable to prevent further violations of the statute.  If Plaintiffs know the tools used to circumvent their technology, they are better able to combat those tools and head off other potential violations.  The problem with Plaintiffs' request is that it is tailored too broadly in that it would permit access to any device which might possibly be used to violate the statutes, rather than those devices where Plaintiffs allege were actually used in violation of the statutes.  Because the Court cannot grant relief broader than that which was alleged in the complaint,

---

[5]  Courts have granted relief similar to that requested here in preliminary injunctions in order to preserve evidence for trial.  *See Century ML-Cable Corp. v. Conjugal P'ship Composed by Edwin Carrillo*, 43 F. Supp. 2d 176, 180 (D. P.R. 1998).

Case 5:07-cv-00096 Document 18 Filed 02/04/08 Page 16 of 16 PageID #: 195

the Court will modify Plaintiffs' request accordingly as set forth more fully in the accompanying Judgment Order.

> (7)    Part G

Finally, Plaintiffs ask the Court to require Defendant to report his compliance with the injunction within thirty days of its entry. The Court finds that this request is reasonable to ascertain that Defendant is not continuing to violate the statute. Moreover, because Defendant has failed to respond to Plaintiffs' motion for default judgment, such an Order facilitates Plaintiffs' monitoring of Defendant to ensure that he is fulfilling his responsibilities under the injunction. Therefore, the Court grants Plaintiffs' motion as to this form of relief.

## IV.  CONCLUSION

Based on the foregoing, Plaintiffs are thereby awarded $10,000 in statutory damages for each of Defendant's ten violations of each statute, for a total award of $100,000. Moreover, the Court finds that statutory damages are not an adequate remedy, and that an injunction is necessary to accomplish the statutory objective of deterring further violations. Plaintiffs are thereby entitled to injunctive relief as set forth in the accompanying Judgment Order. Plaintiffs are further entitled to recover reasonable attorney's fees and costs in the amount of $9,196.65, together with such other fees and costs as are subsequently incurred and post-judgment interest at the established federal rate on the date of judgment. A Judgment Order will enter this day implementing this Court's ruling.

ENTER:        February 4, 2008

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

16